# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF COLORADO

| | |
|---|---|
| In re: | |
| Martines Palmeiro Construction, LLC | Case No. 25-12313 TBM |
| EIN: 27-5490625 | Chapter 11 |
| Debtor. | |

## MOTION TO APPROVE SETTLEMENT AGREEMENT
## WITH SUBCONTRACTOR RIO GRANDE CO.

Martines Palmeiro Construction, LLC ("MPC" or "Debtor"), for its Motion to Approve Agreement (this "Motion") with Rio Grande Co. ("Subcontractor," and collectively with Debtor, the "Parties"), and in support states as follows:

## I.     BACKGROUND

A.     On August 26, 2021, the Debtor, as general contractor, entered into a Construction Agreement with PR III/HSR Central Park Denver I, LLC ("Owner") regarding the Central Park Station apartment project ("Project") located at 3650 N. Uinta St., Denver, CO 80238 ("Property"). The Debtor contracted with Subcontractor to perform work on the Project pursuant to the Work Authorization No. MPC100950 and Master Agreement #MPC-RIOGRA-22 (the "Subcontract").

B.     On April 21, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing Case No. 25-12313 TBM (the "Bankruptcy Case") pending before the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court").

C.     Prior to the Petition Date, disputes arose between the Debtor and Subcontractor related to, among other things, the Parties performance and alleged Claims[1] under the Subcontract by both Parties, damages suffered and to be suffered by such alleged breaches, and the amount, if any, owed under the Subcontract.

D.     On or about November 22, 2024, Freund & Freund Plumbing and Heating, LLC filed a mechanic lien foreclosure lawsuit against the Debtor, Owner, and Subcontractor, among others, initiating Denver District Court Case 2024CV033635 ("Lawsuit").

---

[1] Unless otherwise defined herein all defined terms refer to the terms as defined in the Agreement attached hereto as Exhibit 1.

E.    The Parties have reached an agreement concerning any and all alleged Claims under the Subcontract, relating to the Project, and Lawsuit.

F.    To avoid additional costs and delays, the Parties desire to settle their disputes related to the Subcontract and the Project pursuant to the terms and conditions set forth in the Settlement Agreement, a copy of which is attached as **Exhibit 1** (the "Agreement"). Through the Agreement the Parties agree as follows, which is excerpted from the Agreement:

1. In consideration of the promises contained in the Agreement and the amount of $100,000.00 paid directly ("Settlement Sum") to the Subcontractor by the Owner, which shall represent full and final payment to Subcontractor for all and any Work performed by Subcontractor, whether pursuant to the Subcontract or otherwise, on or pertaining to the Project.

2. Within eight business days of the Effective Date, Subcontractor shall execute Unconditional Lien Waivers and provide recorded releases of the Liens two days after the Effective Date as set forth in paragraphs 3 and 6 of the Agreement.

3. The Parties shall provide each other with mutual releases regarding the Claims and any Alleged Damages related to the Work, Project, Subcontract, Property, or Lawsuit as detailed in paragraphs 4 and 5 of the Agreement except for Subcontractor's obligations regarding completion or correction of its Work, any warranty obligations or liability for latent construction defects or other deficiencies in the Work wither contained within the Subcontract, the Construction Contract, or available under law.

4. Within eight days of the Effective Date, Subcontractor and Owner shall file a joint motion to dismiss Subcontractor from the Lawsuit.

Parties in interest should refer to the Agreement for the complete terms thereof. To the extent of any discrepancies between the description of the Agreement in this Motion and the Agreement, the Agreement shall control. Through this Motion, the Debtor requests entry of an order approving the Agreement under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure.

## II.    ARGUMENT AND AUTHORITY

1.    To minimize litigation and expedite the administration of a bankruptcy estate, "'compromises are favored in bankruptcy.'" *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)).

2

2. The Court has authority to approve the compromise under Bankruptcy Rule 9019(a), which provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Although the Court has discretion to approve a compromise under Rule 9019, see *Kaiser Steel*, 105 B.R. at 978, its decision "must be an informed one based upon an objective evaluation of developed facts." *Reiss v. Hagmann*, 881 F.2d 890, 892 (10th Cir. 1989).

3. In assessing a request to approve a compromise under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, "a court's general charge is 'to determine whether the settlement is fair and equitable and in the best interests of the estate.'" *Official Comm. of Unsecured Creditors v. Western Pac. Airlines, Inc.* (*In re Western Pac. Airlines, Inc.*), 219 B.R. 575, 579 (D. Colo. 1998) (quoting *Kaiser Steel Corp. v. Frates* (*In re Kaiser Steel Corp.*), 105 B.R. 971, 976 (D. Colo. 1989)).

4. Courts have focused on four primary factors in considering approval of bankruptcy settlements: "the probable success of the litigation on the merits, any potential difficulty in collection of a judgment, the complexity and expense of the litigation and the interests of creditors in deference to their reasonable views." *Kaiser Steel*, 105 B.R. at 977; see *Korngold v. Loyd* (*In re Southern Medical Arts Companies, Inc.*), 343 B.R. 250, 256 (B.A.P. 10th Cir. 2006) (same); *Martin*, 91 F.3d at 393 (same). In addition to considering those factors, the Court "must carefully weigh the value of the settled claim against the value to the estate by the settlement." *In re The Hermitage Inn, Inc.*, 66 B.R. 71, 72 (Bankr. D. Colo. 1986). "[S]ome deference to the business judgment" of a trustee also is appropriate where a proposed settlement otherwise is fair and equitable to the estate. *In re OptInRealBig.com, LLC*, 345 B.R. 277, 291 (Bankr. D. Colo. 2006).

5. The Agreement allows for resolution of all Claims and Alleged Damages with Subcontractor under the Subcontract and relating to or arising out of the Project and Lawsuit, except for claims related to latent defects, which are unknown and contingent at this time. The Agreement also allows for a final payment by Owner to Subcontractor as full and final resolution of any amounts owed to Subcontractor. The Debtor asserted Claims in the amount of $49,795.00 against Subcontractor, while Subcontractor asserted Claims against the Debtor in the amount of $124,795.00. Here, the Owner has paid Subcontractor the Settlement Sum in the amount of $100,000.00 in full resolution of these Claims. As a result, the Debtor's claim against the Owner shall be reduced by the amount of the payment. It further allowed for the release of liens encumbering the Project, as well as executed unconditional lien waivers and releases from Subcontractor. It further provides for dismissal of Subcontractor from the Lawsuit. Absent resolution of these matters, Subcontractor and the Debtor must engage in lengthy and costly litigation as to the Parties' respective rights and interests in under the Subcontract, Claims and Alleged Damages. This Agreement allows both parties to settle the majority of the claims and issues under the Subcontract and relating to the Project and Lawsuit

while facilitating payment to Subcontractor, including payment to resolution of amount to any Sub-subcontractors, while releasing liens on the Property to allow the Owner and its residents to move forward with such encumbrances. Further, payment of funds to Subcontractor and resolution of theses outstanding Claims ultimately assists with the Debtor's reorganization efforts and ultimately generates returns to creditors and the estate.

6. It is unknown the extent the Debtor would prevail in future litigation. The Debtor believes he would prevail, to some extent, on the merits in the event of further litigation; however, the litigation involves inherent risks and uncertainty due to the complexity and multitude of issues that could only be resolved after further costly proceedings. Through the Agreement and Court approval thereof, the Parties can resolve outstanding liabilities and recover amounts for the benefit of all creditors. The Agreement allows the Debtor to proceed with reorganizing the estate for the benefit of all creditors while eliminating the risk, cost, and delay of trial. In the event of further litigation, the Debtor believes he would incur substantial fees and costs further depleting the estate and return to creditors. The Agreement allows for the resolution of these issues on terms that are fair, equitable, and in the best interest of the estate.

7. The Agreement was negotiated in good faith and arm's-length between Debtor and Subcontractor. The Debtor believes that the Agreement is fair and reasonable under the circumstances of this case, and that the factors favor approval under Fed. R. Bankr. P. 9019(a).

WHEREFORE, the Debtor respectfully requests entry of an order: (i) granting this Motion; (ii) approving the Agreement attached hereto as **Exhibit 1**; and (iii) entering such other relief as deemed appropriate.

Dated: July 2, 2025.

Respectfully submitted,

Allen Vellone Wolf Helfrich & Factor P.C.

*/s/Katharine S. Sender*
Jeffrey A. Weinman, #7605
Jeremy T. Jonsen, #48859
Katharine S. Sender, #47925
1600 Stout Street, Suite 1900
Denver, Colorado 80202
Tel.: (303) 534-4499
JWeinman@allen-vellone.com
JJonsen@allen-vellone.com
KSender@allen-vellone.com

*Attorneys for the Debtor-in-Possession*

5