**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Thomas B. McNamara

In re:

MARTINES PALMEIRO
CONSTRUCTION, LLC,

Debtor.

Bankruptcy Case No. 25-12313 TBM
Chapter 11

_____

**ORDER AUTHORIZING EXAMINATION OF DOMINION ENTITIES**
_____

**Procedural Background**

On April 21, 2025, Martines Palmeiro Construction, LLC, (the "Debtor") filed for relief under Chapter 11 of the Bankruptcy Code.  On the same day, the Debtor filed an "Application to Employ Allen Vellone Wolf Helfrich & Factor" (Docket No. 5).  Three days later, on April 24, 2025, the Debtor filed an "Amended Application to Employ Allen Vellone Wolf Helfrich & Factor" (Docket No. 14, the "Amended Application to Employ").

On May 8, 2025, the United States Trustee filed an Objection to the Amended Application to Employ (Docket No. 43), asserting that proposed counsel for the Debtor, Allen Vellone Wolf Helfrich & Factor ("Proposed Counsel") had a conflict of interest that precluded its being employed to represent the Debtor in its bankruptcy case.

The Debtor did not file its statements and schedules until May 19, 2024.  On that date, the Debtor filed "Schedule E/F: Creditors Who Have Unsecured Claims" (Docket No. 51).  Therein, the Debtor listed a claim of Freund & Freund Plumbing and Heating, LLC ("F&F"), stating that the basis of such claim was "Subcontractor" and that the amount of such claim was $719,785.20.  The Debtor also listed a claim of Plaza Fitzsimons Owner, LLC ("Plaza"), stating that the basis of such claim was "Plaza Fitzsimons - Construction Contract" and that the amount of such claim was "Unknown."  The Debtor indicated in Schedule E/F that the claims of both F&F and Plaza were "Disputed."

Thereafter, on May 22, 2025, F&F filed proof of claim no. 13-1, asserting an unsecured claim in the amount of $1,444,946.74 for "Laborers or material furnished, labor and services performed, machinery, tools and equipment supplied."  On May 27, 2025, Plaza filed proof of claim no. 16-1, asserting an unsecured claim in the amount of $5,892,535.00 for "Breach of Contract, Liquidated Damages, and Trust Fund Violations."

On May 27, 2025, the Court held a status conference pursuant to 11 U.S.C. § 105(d).  At the status conference, Proposed Counsel provided background information regarding the Debtor's operations and the circumstances that gave rise to the filing of the bankruptcy case.  Proposed Counsel also responded to the Court's questions regarding its proposed employment and the conflict of interest raised by the United States Trustee.  In

the course of its presentation, Proposed Counsel advised the Court that the Debtor was not operating and would not be seeking to restructure its operations, but would instead file a plan providing for the orderly liquidation of its assets. As the Amended Application to Employ was not set for a hearing, the Court did not rule on the conflict of interest issue or the Amended Application to Employ, stating that it would do so when a certificate of contested matter was filed. (*See* "Minutes of Proceeding" (Docket No. 70).)

Not long after the status conference, on June 2, 2025, Plaza filed an "Ex Parte Motion for Order Authorizing Rule 2004 Examination of the Debtor" (Docket No. 72, the "Motion to Examine Debtor"), in which F&F joined (Docket No. 73). The Court granted such Motion in a "Order Granting Motion for Rule 2004 Examination" (Docket No. 74, the "Debtor Examination Order"). Thereafter, the Debtors filed a "Motion for Reconsideration of Order Granting Motion for 2004 Examination" (Docket No. 76) requesting that the Court vacate the Debtor Examination Order" on the ground that it violated the pending proceeding rule. On June 11, 2025, the Court entered an "Order Denying Motion for Reconsideration" (Docket No. 81) in which it determined that the pending proceeding rule did not preclude examination of the Debtor, declined to vacate the Debtor Examination Order, and affirmed that Plaza and F&F could proceed to examine the Debtor pursuant to Fed. R. Bankr. P. 2004 and could compel the attendance of witnesses and production of documents in the manner prescribed by Fed. R. Bankr. P. 2004(c) and 9016.

On July 24, 2025, the Court held a non-evidentiary hearing on the Amended Application to Employ and Objection thereto. After hearing from Proposed Counsel and the United States Trustee, the Court issued an oral ruling in which it determined that there existed a conflict of interest which precluded its approval of Proposed Counsel's employment as counsel for the Debtor in the bankruptcy case. The Court, therefore, denied the Amended Application and ordered the Debtor to employ new counsel to represent it in the case. (Docket No. 134.) Kutner Brinen Dickey Riley, P.C, filed an application to serve as counsel for the Debtor on August 18, 2025 (Docket No. 149, the "Kutner Application"). The Kutner Application remains pending.

On August 21, 2025, Plaza filed a "Motion to Convert Case" (Docket No. 153, the "Motion to Convert") in which it moved pursuant to 11 U.S.C. § 1112(b) to convert the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code, asserting, among other things, that the case had been filed in bad faith. Notably, Plaza advocated against dismissal of the case in the Motion to Convert, asserting:

> [D]ismissal of this Bankruptcy Case would create chaos for creditors generally and would make it difficult for them to liquidate assets and distribute them rationally. It would create a race to the courthouse that bankruptcy was meant to stop. Conversion to a Chapter 7 where a trustee could methodically and efficiently liquidate assets and distribute them to a large group of creditors makes much more sense. That is particularly true given that the Debtor might have claims against Management that would not [be prosecuted] if the Bankruptcy Case were dismissed.

2

F&F filed a Joinder in the Motion to Convert on August 27, 2025.  (Docket No. 171.)  The Court will hold a hearing on the Motion to Convert on September 18, 2025.  (*See* Notice of Motion to Convert (Docket No. 155).)

On August 25, 2025, Plaza filed an "Ex Parte Motion for Order Authorizing Rule 2004 Examination of Dominion Entities" (Docket No. 167, the "Motion to Examine Dominion").  In the Motion to Examine Dominion, Plaza requested authorization pursuant to Fed. R. Bankr. P. 2004 to examine three entities:  Dominion Construction Services, LLC; Dominion Construction, LLC; and Dominion Development and Construction, LLC (collectively, the "Dominion Entities").  In the Motion to Examine Dominion, Plaza asserts that all three Dominion Entities are owned by Michael Martines and Tony Lajimodiere, both of whom hold equity interests in the Debtor.  (Docket No. 167 ¶¶ 4-5.)  Plaza further states:

> Upon information and belief, the Debtor pre-petition transferred or assigned executory contracts for construction projects to Dominion and is using the Debtor's former employees on those same projects. The Debtor did not receive any consideration for such transfers, as none appears in its schedules or statement of financial affairs, and revenue generated from those projects might rightly belong to the Debtor's estate. Plaza sought information from the Debtor concerning this issue pursuant to a Rule 2004 examination, but production of that information has been delayed multiple times due to denial of the Debtor's application to employ counsel.

(Docket No. 167 ¶¶ 4-5.)

### The Objection to the Motion to Examine Dominion and Plaza's Response

On August 27, 2025, the Dominion Entities filed an Objection to the Motion to Examine Dominion (Docket No. 168), in which they oppose the request to examine the Dominion Entities.  The Dominion Entities argue, generally, that the Court should deny the Motion to Examine Dominion because:  (1) no documents evidencing transfers of executory contracts for construction projects exist; and (2) the proposed examination of the Dominion Entities will be duplicative of requests already made to the Debtor.  The Dominion Entities suggest that the proposed examination is improper because the real purpose of the examination is to allow Plaza to identify another entity from which it could collect debts owed to it by the Debtor, and because the proposed examination would not produce information relevant to these bankruptcy proceedings.  Later the same day, August 27, 2025, Plaza filed a Response to the Objection.  (Docket No. 172.)

Having reviewed the Motion to Examine Dominion, the Objection thereto, and the Response to the Objection, the Court concludes that the Objection should be overruled and that it should grant the Motion to Examine Dominion.

**Rule 2004**

Fed. R. Bankr. P. 2004 examinations serve as the basic method of discovery in bankruptcy case. Rule 2004 allows, in the absence of any pending action of any kind, for "any party in interest" to request an examination of any person or entity concerning:

>(A) the debtor's acts, conduct, or property;
>
>(B) the debtor's liabilities and financial condition;
>
>(C) any matter that may affect the administration of the debtor's estate; or
>
>(D) the debtor's right to a discharge.

Fed. R. Bankr. P. 2004(b)(1). In a Chapter 11 case, a Rule 2004 examination may also relate to:

>(A) the operation of any business and the desirability of its continuing;
>
>(B) the source of any money or property the debtor acquired or will acquire for the purpose of consummating a plan and the consideration given or offered; and
>
>(C) any other matter relevant to the case or to formulating a plan.

Fed. R. Bankr. P. 2004(b)(2). The scope of Rule 2004 examinations is broad — so much so that the exercise has sometimes been characterized as a "fishing expedition." *Intercontinental Enters., Inc. v. Keller (In re Blinder, Robinson & Co., Inc.)*, 127 B.R. 267, 273, 274 (D. Colo. 1991) ("Many courts recognize that Rule 2004 in effect authorizes a 'fishing expedition,' and 'is essentially creditor and trustee oriented.'"). *See also In re Martino*, 2011 WL 5856327 *2 (Bankr. D. Colo. Nov. 17, 2011) ("Rule 2004 has been likened to a 'fishing expedition.'"). As the Court stated in its "Order Denying Motion for Reconsideration" (Docket No. 81, "a little fishing can be a good thing and, in fact, may be required to discover the debtor's assets, confirm liabilities, and uncover possible irregularities by the debtor."

But, while some fishing may be necessary, the expedition is "not without bounds." *In re Buick*, 174 B.R. 299, 305 (Bankr. D. Colo. 1994). All requests to conduct Rule 2004 examinations must be approved by the Court. Fed. R. Bankr. P. 2004(a). While requests for authorization to conduct Rule 2004 examinations are routinely granted, *In re Assoc. Cmty. Servs., Inc.*, 520 B.R. 650, 655–56 (Bankr. E.D. Mich. 2014), courts have discretion to consider whether the requested discovery is warranted. *Buick*, 174 B.R a 305 ("the court *may* order the examination"). *See also Enron,* 281 B.R. at 840 ("As the permissive language of the rule suggests, the Court has the discretion to grant a request for a 2004 examination.") A court need not approve proposed discovery that is redundant, onerous, unreasonable, disproportionate, abusive, or harassing.

4

**Discussion**

Having considered the Motion to Examine Dominion, the Objection thereto, the Response to the Objection, and related authority, the Court determines that the Motion to Examine Dominion should be granted because questions regarding the alleged transfer of executory contracts by the Debtor to the Dominion entities relate to the Debtor's "acts, conduct, or property," as well as the Debtor's "liabilities and financial condition" and thus are well within the scope of Rule 2004.  *See* Fed. R. Bankr. P. 2004(b)(1)(A) and (B).

To the extent that the Dominion Entities argue that the Court should not authorize the proposed examination because no transfers of executory contracts were made, the Court overrules such objection.  Indeed, if, as the Dominion Entities assert, no transfers of executory contracts occurred, the Dominion Entities will be free to say as much in response to discovery responses promulgated in connection with the proposed Rule 2004 examination.  Unlike the statement in the Objection, which is unsupported by an affidavit or verification, any statement denying the existence such transfers will have to be made under oath and would constitute substantial evidence as to the existence of an potential estate asset.

The Court also overrules the Objection to the extent that the Dominion Entities contend that the Court should not authorize an examination under Rule 2004 because the proposed examination would be duplicative of requests made to the Debtor, the Court also overrule the Objection.  Rule 2004 does not place any limit on the number of sources from whom a creditor may seek information related to the Debtor's financial affairs.  Indeed, it is precisely because debtors often fail to maintain and/or produce information relevant to bankruptcy proceedings that courts routinely authorize examination of other parties that might have such information.

Finally, the Court rejects the contention that Plaza is improperly seeking to utilize Rule 2004 to gain information about other entities from which it might collect the debt owed to it.  If, as Plaza alleges, the Debtor transferred executory contracts for construction projects to the Dominion Entities, such transfers may be avoidable and recoverable by either the Debtor or a trustee for the benefit of the bankruptcy estate.  *See* 11 U.S.C. §§ 541, 548 and 550.  In the Motion to Convert, Plaza seeks to convert the case to Chapter 7, where liquidation of assets (including recovered fraudulent transfers) could proceed in an orderly fashion and advocates against a dismissal (wherein it would be free to pursue recovery of fraudulent transfers from third-party transferees) on the ground that conversion is necessary to prevent a race by the Debtor's creditors to the courthouse.  As such, the Court views Plaza's effort to gain information about a potentially avoidable transfer as an effort to make possible the recovery of an estate asset for the benefit of all of the Debtors' creditors as part of the bankruptcy – not an effort to obtain information it alone could use to seek payment from a third party, as the Dominion Entities suggest.  Examination into such matters, which all fall within the ambit of Rule 2004(b)(1) is appropriate.  Indeed, the circumstances related to the alleged transfers to the Dominion Entities might well factor into the Court's evaluation of the Motion to Convert, should such transfers exist.  *See* 11 U.S.C. § 1112(b)(1) (providing that court shall convert a case under chapter 11 to a case under chapter 7 for cause); *In re No Rust Rebar, Inc.*, 641 B.R. 412, 423 (Bankr. S.D. Fla. 2022) ("In addition to the causes provided under § 1112(b)(4) and § 1185(a), bankruptcy courts

have frequently identified other factors that support a finding of cause [under 11 U.S.C. § 1112(b)(1)], including where 'the debtor in possession has a conflict of interest in properly investigating and pursuing potential fraudulent transfers' and other claims of the estate.") (quoting *In re Picacho Hills Utility Co., Inc.*, 518 B.R. 75, 82 (Bankr. D.N.M. 2014), and citing *In re Ashley River Consulting, LLC*, 2015 WL 1540941, at *9 (Bankr. S.D.N.Y. Mar. 31, 2015)). Because the existence of any fraudulent transfers, and the potential avoidance and recovery thereof, could well affect the administration of the Debtor's estate, an examination seeking information about such transfers is appropriate. Fed. R. Bankr. P. 2004(b)(1)(C). *See also* Fed. R. Bankr. P. 2004(b)(2)(C) (allowing examination related to any matter relevant to the case).

## Order

For the foregoing reasons, it is

ORDERED that the Motion to Examine Dominion is GRANTED. Plaza may proceed to examine Dominion Construction Services, LLC; Dominion Construction, LLC; and Dominion Development and Construction, LLC, pursuant to Fed. R. Bankr. P. 2004 and may compel the attendance of witnesses and production of documents in the manner prescribed by Fed. R. Bankr. P. 2004(c) and 9016 (which makes Fed. R. Civ. P. 45 applicable to this bankruptcy case).[1]

DATED this 28th day of August, 2025.

BY THE COURT:

Thomas B. McNamara,
United States Bankruptcy Judge

---

[1] To the extent that any of the Dominion Entities believes that a subpoena issued pursuant to Fed. R. Bankr. P. 9016 and Fed. R. Civ. P. 45 or any particular discovery request made thereunder is inappropriate, it may seek protection from the Court pursuant to the procedures outlined in Rule 45(d). *See In re Sheetz*, 452 B.R. 746, 748-49 (Bankr. N.D. Ind. 2011).